IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-644-D

| | |
|---|---|
| JEREMIAH WHITE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security, )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM &**<br>**RECOMMENDATION** |

This matter is before the Court upon the parties' Motions for Judgment on the Pleadings. (DE's-22 & 24). The time for filing any responses or replies has expired, and, therefore, these motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), these motions have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-22) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

**Statement of the Case**

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income on June 2, 2009, alleging that he became unable to work on July 9, 2007. (Tr. 14). This application was denied initially and upon reconsideration. *Id.* A hearing was held before an Administrative Law Judge ("ALJ"), who determined that Plaintiff was not disabled during the relevant time period

1

in a decision dated January 31, 2011. *Id.* at 14-24. The Social Security Administration's Office of Hearings and Appeals denied Plaintiff's request for review on September 15, 2011, rendering the ALJ's determination as Defendant's final decision. *Id.* at 1-5. Plaintiff filed the instant action on November 30, 2011. (DE-7).

**Standard of Review**

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." Craig, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453,

2

1456 (4th Cir. 1990).

**<u>Analysis</u>**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

<u>Mastro v. Apfel</u>, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the sequential evaluation. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 9, 2007. (Tr. 16). At step two, the ALJ found that Plaintiff had the following severe impairments: 1) post-concussion syndrome; 2) degenerative disc disease; 3) degenerative joint disease; and 4) obesity. *Id.* However, the ALJ determined that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1. *Id*. at 17. Next, the ALJ determined that Plaintiff had the following residual functional capacity ("RFC"):

> claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b). The

> claimant can lift, carry, push and pull up to 20 pounds occasionally and 10 pounds frequently from waist to chest level and must avoid above shoulder lifting, carrying, pushing, pulling and reaching. The claimant had to avoid climbing, balancing, crawling, and kneeling, but can perform other postural movements such as stooping and crouching on an occasional basis. In addition, the claimant must avoid constant fine and gross manipulation and reaching. Also, the claimant has to avoid working around hazards such as moving dangerous machinery and unprotected heights. Finally, the claimant requires simple, routine, and low stress tasks with limited ability to read or write.
>
> *Id.* at 19.

The ALJ then determined that Plaintiff was unable to perform his past relevant work. *Id.* at 23. However, based on the testimony of a vocational expert, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform. *Id.* at 23-24. Accordingly, the ALJ determined that Plaintiff was not under a disability from June 2, 2009 through January 31, 2011. *Id* at 24.

The ALJ's findings were accompanied by a thorough review and assessment of the entire record. This "assessment . . . provides a backdrop for the ALJ's evaluation[s] . . . and provides insight into [them]." Worden v. Astrue, 2012 WL 2919923, *5 (E.D.N.C. May 29, 2012), *Report and Recommendation Adopted by*, Worden v. Astrue, 2012 WL 2920289. Moreover, the undersigned has reviewed the entire record and finds that the ALJ's determinations were supported by substantial evidence.

Plaintiff's assignments of error rely on the contention that the ALJ incorrectly weighed the evidence. Although Plaintiff may disagree with the determinations made by the ALJ after weighing the relevant factors, the role of this Court is not to undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Secretary. Craig, 76 F.3d at 589. Because that is what Plaintiff requests this Court do, his claims are

4

without merit.

Specifically, Plaintiff argues that the ALJ did not appropriately assess whether Plaintiff met or medically equaled Listing 12.05. Listing 12.05 states, in pertinent part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in . . . B [or] C . . . . are satisfied . . .
>
> B. A valid verbal, performance, or full scale IQ of 59 or less; OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant workrelated limitation of function . . .
>
> 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05

With regard to Listing 12.05, the ALJ made the following findings:

> The undersigned specifically considered Listing 12.05 (Mental Retardation) which requires evidence that demonstrates or supports the onset of the impairment before the age of 22. The claimant's IQ was not tested until 2009 when he scored a 59 on the Full Scale IQ test (Exhibit 4F at 3). The undersigned considered other evidence to determine if the onset of his mental retardation was before the age of 22. High school records and Stanford achievement test results do not indicate that the claimant was mentally retarded before the age of 22 (Exhibit llE). The claimant testified that he was in special education. High school records from 1984 to 1990 indicate that the claimant received a certificate of attendance in June 1990 (Exhibit llE). The claimant's representative explained that he did not have enough credits to graduate so he was given the certificate of attendance instead (testimony). He took English, social studies, math, science, physical education, and carpentry and earned average grades in the 70s (Exhibit llE at 1 ). He scored between the third and eighth percentile for the complete Stanford Achievement Test, and scored as high as the 18th percentile on the Otis-Lennon School ability test given in 1988 when he was 16 years old (Exhibit llE at 2).
>
> The undersigned finds the claimant's high school performance, work history, and other accomplishments before the age of 22 and before his accident in 2007 do not demonstrate mental retardation. The claimant worked consistently

5

as a trash collector from 1994 until his accident in 2007 (Exhibit 2E at 1). He was able to obtain an Alabama driver's license through an oral test and has always been able to care for himself (testimony, Exhibit 4E). Additionally, the consultative examiner who performed the IQ tested suggested that the scores be viewed with caution in light of the claimant's response style during the IQ test (Exhibit 4F at 3). The claimant was generally aware of national and international events and was able to share background information without difficulty (Exhibit 4F at 2).The undersigned notes that a malingering test was not performed . . .

Jerry Millers, masters of counseling, performed a psychological consultative examination in August 2009. He noted the claimant was able to share background data and time information without difficulty, and adequately talk and converse with him. Although the claimant's Full Scale IQ was 59, Mr. Millers suggested that the scores be viewed with caution. The claimant's thought processes were intact, and he was auditorily and visually alert and generally aware of national and international events and was able to share background information without difficulty (Exhibit 4F at 2). He opined the claimant did not have a thought disorder and could manage his own monies (Exhibit 4F at 3). The undersigned gives this opinion significant weigh because Mr. Millers performed the WAIS-III test, interviewed the claimant, and observed him.

State agency medical consultant Dr. Banu Krishnamurthy performed a mental residual functional capacity assessment and noted marked limitations in the claimant's ability to understand, remember, and carry out detailed instructions (Exhibit 6F at 1 ). He also found the claimant had moderate limitations in the ability to maintain attention and concentration for extended periods and complete a normal workday and workweek without interruptions from psychologically based symptoms (Exhibit 6F at 1 ). He found that the claimant had moderate limitations in the ability to interact appropriately with the general public, to respond appropriately to changes in work setting, and to set independently set realistic goals and make plans (Exhibit 6F at 2). He opined that the claimant was able to understand and follow simple instructions, sustain attention for simple tasks that were not production based, interact on a limited basis with others, and could adapt to routine changes of simple work (Exhibit 6F at 3). State agency psychological consultant W.W. Albertson, Ed.D., reviewed Dr. Krishnamurthy's assessment and affirmed it. The undersigned gives significant weight to the opinions of both doctors because they appeared to have objectively reviewed the evidence of record at the initial and reconsideration levels, and their opinions are consistent with the evidence received at the hearing level including the claimant's testimony.

*Id.* at 17, 21.

6

Case 5:11-cv-00644-D   Document 27   Filed 01/09/13   Page 6 of 9

The undersigned notes that the Fourth Circuit has held that "an ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." Hancock v. Astrue, 667 F.3d 470, 474 (4th Cir. 2012).

Here, the ALJ's assessment of Plaintiff's IQ score, as well as his other findings, was supported by substantial evidence. Plaintiff underwent a psychological examination on August 11, 2009. *Id.* at 221. It was noted that Plaintiff had been able to obtain a driver's license by taking an oral test. *Id.* His thought processes were intact. *Id.* at 222. He was able to share background data and time information without difficulty. *Id.* at 223. Plaintiff's vocabulary was adequate to talk and converse with the examiner. *Id.* Although Plaintiff earned a Full Scale IQ score of 59, it was noted that Plaintiff's "response style was negligible" and that the score "may be viewed with caution." *Id.* at 222-223. The examiner also opined that Plaintiff did not have a thought disorder and "could manage monies if he were to receive these." *Id.* at 223. Ultimately, the examiner did not conclusively diagnose Plaintiff with mental retardation, but noted that mental retardation needed to be ruled out. *Id.*

On September 25, 2009, Dr. Banu Krishnamurthy opined that Plaintiff was not significantly limited in most of his abilities. *Id.* at 227-228. Plaintiff was assessed with a moderate degree of functional limitation as a result of his mental impairment. *Id.* at 241. She also indicated that Plaintiff was able to: 1) understand and follow simple instructions; 2) sustain attention for simple tasks; 3) interact with others on a limited basis; and 4) adapt to routine changes of simple work. *Id.* at 229. Dr. Krishnamurthy also noted that Plaintiff had shown higher adaptive functioning than what his previous IQ score would indicate. *Id.* Specifically, Dr. Krishnamurthy observed that Plaintiff had been able to "work for years at higher than [substantial gainful activity]." *Id.* Finally, Dr. Krishnamurthy stated that Plaintiff's impairments did not

precisely satisfy the diagnostic criteria of Listing 12.05.  *Id*. at 235.

Dr. Krishnamurthy's findings were affirmed by Dr. W.W. Albertson on December 22, 2009.  *Id*. at 309.  He noted that Plaintiff's activities of daily living supported "physical limits more so than mental."  *Id*.  Dr. Albertson also indicated that Plaintiff's initial claim assessed Plaintiff as capable of performing simple, routine, repetitive tasks.  *Id*.

The record also indicates that Plaintiff graduated from High School with a "certificate of attendance."  *Id*. at 191.  His grades were generally in the 70th percentile.  *Id*.  He did not repeat any grades.  *Id*.  However, he did score below national percentile ranks in all subjects on the Stanford Achievement Test.  *Id*. at 192.  Until his alleged disability onset date, Plaintiff worked continuously after he finished school.  *Id*. at 139-140, 148.

Finally, Plaintiff argues that "the ALJ's RFC assessment does not include a discussion of [Plaintiff's] ability to 'understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.'"  (DE-23, pg. 16).  The undersigned disagrees.  As noted above, the ALJ thoroughly examined and summarized the entire record, and his RFC findings were well-articulated and followed from this summary.

In short, the ALJ's findings were supported by substantial evidence, and Plaintiff's claims are without merit.

8

**Conclusion**

For the aforementioned reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE-22) be DENIED, that Defendant's Motion for Judgment on the Pleadings (DE-24) be GRANTED, and that the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina on Wednesday, January 09, 2013.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE